UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL G.,

                                       Plaintiff,                                20-CV-6542Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

                                       Defendant.
_____

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #14.

## BACKGROUND

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), on August 9, 2016, alleging disability beginning March 30, 2016, at the age of 44, due to diabetes, carpal tunnel syndrome, bipolar disorder, neuropathy in both feet, plantar fascitis, depression, attention deficit hyperactivity disorder, high blood pressure, high cholesterol, respiratory problems and arthritis. Dkt. #11, pp.73-74.

On March 4, 2019, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Peter Manzi, Ed.D., at an administrative hearing before Administrative Law Judge ("ALJ"), Connor O'Brien. Dkt. #11, pp.36-72. Plaintiff testified that he is a high school graduate who attended special education classes and obtained a certification for auto mechanics. Dkt. #11, pp.42 & 58. He also obtained a commercial driver license which is currently expired. Dkt. #11, p.42. Plaintiff is single; he lives with his parents in a home with stairs that he climbs every day. Dkt. #11, p.42. He testified that he is in constant pain and always tired and depressed. Dkt. #11, p.48. He testified that his feet hurt very bad and that his carpal tunnel pain is getting worse. Dkt. #11, p.49. Plaintiff is right handed and his right hand hurts worse than his left. Dkt. #11, p.56.  His diabetes is starting to affect his vision, causing intermittent blurriness. Dkt. #11, p.50. He also reported receiving injections and attending physical therapy for arthritis in his left shoulder. Dkt. #11, p.51.  He has difficulty sleeping because of the pain in his feet and legs and has been diagnosed with restless leg syndrome. Dkt. #11, p.51. Plaintiff showers every two or three days and is able to dress himself, although he testified that putting socks and shoes on is difficult and that tying his shoes is painful. Dkt. #11, pp.53-54. He is able to cook every day and do his own laundry. Dkt. #11, p.54. He can walk through the grocery store as long as he takes his time. Dkt.#11, p.55. He carries groceries in from the car. Dkt. #11, p.56. He testified that he could walk about a quarter mile and sit for about 20 minutes at a time. Dkt. #11, p.55.

The VE classified plaintiff's past work as a gas tender, which is a semiskilled, medium exertion position; automobile detailer and tractor trailer truck driver, which are unskilled, medium exertion positions; and cashier, which is an

unskilled, light exertion position . Dkt. #11, p.63. When asked to assume an individual with plaintiff's age, education and past work experience who could perform sedentary work but required the option to change position every hour for up to 5 minutes and could not climb ropes, ladders or scaffolding or balance on narrow or slippery moving surfaces or reach overhead with his left arm, but could frequently handle and finger, use fine acuity, adjust to occasional changes in work setting, make work-related decisions, and work to fulfill daily quotas or expectations but not at a fast-paced automated production line pace and with only occasional exposure to extreme cold or heat, wetness, humidity and airborne irritants, the VE testified that plaintiff could not perform his past work, but could work as a table worker and order clerk, each of which were unskilled, sedentary exertion positions. Dkt. #11, pp.64 & 67-68. The VE testified that any more than 10% time off task over the course of a workday would be work preclusive. Dkt. #11, p.69.

The ALJ rendered a decision that plaintiff was not disabled on June 18, 2019. Dkt. #11, pp.16-29. The Appeals Council denied review on June 4, 2020. Dkt. #11, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on July 27, 2020. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d

145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria

of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 30, 2016; (2) plaintiff's diabetes, diabetic retinopathy, peripheral neuropathy, degenerative disc disease (spine), carpal tunnel syndrome, degenerative joint disease (left shoulder), and affective disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform sedentary work with the following limitations: sit/stand option that allows change of position every 60 minutes for up to 5 minutes, no overhead reaching with left non-dominant arm, frequent handling and fingering, no climbing of ropes, ladders or scaffolds, no balancing on narrow, slippery or moving surfaces, no more than occasional exposure to extreme cold or heat, wetness, humidity and air borne irritants, no more than occasional changes in work setting, no fast-paced, automated production line pace, and frequent use of fine acuity; and (5) plaintiff was not capable of performing his past work as a fuel attendant, cashier or auto detailer, but was capable of working as a table worker or order clerk, each of which were unskilled, sedentary exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #11, pp.21-29.

Plaintiff argues that the ALJ substituted her lay opinion in place of competent medical opinion when she determined that plaintiff could perform sedentary work if afforded the option to change positions for up to five minutes every hour. Dkt. #12-1, pp.14-18.  Plaintiff argues that there was no specific testimony, medical opinion or evidence that a change of position for up to five minutes would be sufficient to allow him to perform sedentary work. Dkt. #12-1, p.17. Plaintiff also argues that there is insufficient evidence in the record to quantify limitations on use of his hands or his capacity to reach in other directions beside overhead as a result of his left shoulder impairment. Dkt. #12-1, p.19.. Dkt. #12-1, p.20. Finally, plaintiff argues that the opinion of the consultative examiner was stale because plaintiff was subsequently diagnosed with bilateral essential tremor, moderate carpal tunnel syndrome and return of left shoulder impairment. Dkt. #12-1, p.22. Plaintiff argues that there was no medical opinion on which to base limitations caused by these impairments. Dkt. #12-1, p.25.

The Commissioner responds that the ALJ appropriately relied upon the consultative examiners' opinions in determining plaintiff's RFC, which were consistent with plaintiff's medical records. Dkt. #15-1, pp.14-17. The Commissioner denies any deterioration in plaintiff's medical condition which wolud render the consultative examiners' opinions stale. Dkt. #15-1, pp.17-20. In any event, the ALJ accounted for the results of the MRI of plaintiff's shoulder by restricting plaintiff from lifting with his left arm. Dkt. #15-1, p.19. The Commissioner argues that substantial evidence supports the ALJ's assessment of plaintiff's functional limitations, which were more restrictive than the recommendations of the consultative examiner. Dkt. #15-1, pp.20-26.

Plaintiff underwent a consultative physical examination by Dominic Cirillo, M.D. on September 23, 2016. Dkt. #11, pp337-343. Dr. Cirillo diagnosed plaintiff with, *inter alia*, chronic peripheral neuropathy involving all four extremities; Type 2 diabetes, poorly controlled; chronic left shoulder pain; chronic right elbow pain; and chronic lower back pain. Dkt. #11, p.342. Dr. Cirillo's examination revealed that plaintiff was able to walk on his toes with complaints of bilateral foot pain and walk on his heels with significant balance issues. Dkt. #11, p.340. Plaintiff was able to squat 75% before experiencing knee and back pain. Dkt. #11, p.340. He was able to rise from a chair without difficulty and get on and off the exam table without assistance. Dkt. #11, p.340. Plaintiff was observed to have full range of motion for flexion and extension of the cervical spine, although he experienced left shoulder pain with flexion. Dkt. #11, p.340. He had full range of motion for cervical spine rotation bilaterally, albeit with left-sided pain on rotation to the extreme right, and full range of motion bilaterally for lateral flexion. Dkt. #11, p.340. His lumbosacral spine demonstrated limitation of flexion at 70 degrees, but full range of motion for lateral flexion and lumbosacral rotation bilaterally. Dkt. #11, p.341. Straight leg raise was negative bilaterally. Dkt. #11, p.341.

Plaintiff's shoulder forward elevation and abduction was limited at 120 degrees bilaterally with forward pain in the left shoulder. Dkt. #11, p.341. His internal rotation displayed full range of motion bilaterally and external rotation to 40 degrees right and 60 degrees left. Dkt. #11, p.341. Plaintiff's elbow exhibited full range of motion for flexion/extension on the left and 10-30 degrees on the right, with full range of motion for prontation and supination. Dkt. #11, p.341. He had full range of motion of his wrists,

except 30 degrees dorsiflexion and 20 degrees ulnar deviation on the left wrist. Dkt. #11, p.341. Dr. Cirillo detected decreased sensation in stocking glove distribution for all extremities and decreased pinprick sensation to mid calves and mid forearms, with 5/5 strength in all extremities. Dkt. #11, p.342. No edema or muscle atrophy was evident in plaintiff's extremities and his hand and finger dexterity was intact with 5/5 grip strength bilaterally. Dkt. #11, p.342.

Dr. Cirillo opined that plaintiff would have a mild limitation for walking, particularly on uneven ground; mild limitation for tasks requiring fine motor dexterity of the hand due to his neuropathy and mild limitations for feeling and touching. Dkt. #11, p.342. He further opined that plaintiff would have a mild to moderate limitation for lifting and carrying and a mild limitation for bending and twisting. Dkt. #11, p.342. The ALJ afforded Dr. Cirillo's opinion significant weight because of his experience assessing individuals pursuant to SSA regulations and the consistency of his assessment with the evidence of record. Dkt. #11, p.26. "It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Baszto v. Astrue*, 700 F. Supp.2d 242, 249 (N.D.N.Y. 2010).

Medical source opinions that are conclusory, stale or based upon an incomplete medical record cannot constitute substantial evidence in support of an ALJ's determination of a plaintiff's RFC. *Camille v. Colvin*, 104 F. Supp.3d 329, 343-344 (W.D.N.Y. 2015), *aff'd,* 652 Fed. App'x 25 (2d Cir. 2016). A medical opinion is not

necessarily stale simply based on its age. *Fambo v. Comm'r of Soc. Sec'y*, 474 F. Supp.3d 603, 608 (W.D.N.Y. 2020). "A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." *Id.* However, a medical opinion may be stale where subsequent treatment notes indicate a claimant's condition has deteriorated. *Whitehurst v. Berryhill*, 16-CV-1005, 2018 WL 3868721, at *4 (W.D.N.Y. Aug. 14, 2018).

Plaintiff's bilateral essential tremor and carpal tunnel syndrome were each referenced in medical records prior to the consultative examination and the medical records do not suggest that these conditions deteriorated so as to compromise Dr. Cirillo's assessment of these impairments. Dkt. #11, pp. 348 & 350. For example, although plaintiff reported on December 28, 2018 that his bilateral hand tremor was causing difficulty with fine motor skills[1], plaintiff's finger tapping was observed to be normal bilaterally and plaintiff declined to try another medication. Dkt. #11, p.444-445. Similarly, although an electromyographic nerve test confirmed moderate carpal tunnel syndrome, plaintiff declined referral to a specialist for further treatment. Dkt. #11, p.445. Plaintiff's choice of conservative treatment for these impairments does not suggest that Dr. Cirillo's opinion of mild limitation for tasks requiring fine motor dexterity, which was acommodated by the ALJ's restriction to frequent handling and fingering, was insufficient. *See Tomaszewski v. Berryhill*, 18-CV-728, 2019 WL 5853404, at *3 (W.D.N.Y. Nov. 8, 2019) (mild to moderate limitations with fine manipulation accounted for by limitation to frequent handling, fingering and reaching).

---

[1] Prior to this, medical records indicate that plaintiff's mild benign essential tremor was unchanged and did not affect his activities of daily living. Dkt. #11, pp.382-383.

Plaintiff advised Dr. Cirillo that he had suffered left shoulder pain for years. Dkt. #11, p.337. After reporting a recurrence of left shoulder pain on October 24, 2018, plaintiff was observed on examination to have full active range of motion, albeit with pain past 90 degrees in forward elevation and abduction. Dkt. #11, p.408. He was diagnosed with left shoulder rotator cuff tendinitis and impingement and received a cortisone injection. Dkt. #11, p.408. A subsequent MRI revealed fraying of the labrum with tendinopathy of the rotator cuff, but no evidence of a complete tear. Dkt. #11, p.438. His active range of motion was observed to be limited in forward elevation and abduction to 90 degrees. Dkt. #11, p.438. He was referred to physical therapy. Dkt. #11, p.438. The ALJ appropriately accounted for these symptoms by restricting plaintiff from reaching overhead with his left arm. *See Lewis v. Colvin*, 13-CV-1072, 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014) (ALJ did not err in imposing restriction for overhead reaching in the absence of treating source opinion where plaintiff suffered partial thickness tear of left rotator cuff).

Plaintiff is correct that the medical evidence does not support a finding that plaintiff be required to change positions for up to five minutes every hour. Despite a thorough examination of plaintiff's musculoskeletal system, Dr. Cirillo opined only that plaintiff would have a mild limitation for walking, particularly on uneven ground. Dkt. #11, p.342. Plaintiff's treating physician declined to evaluate plaintiff's ability to do work related activities, stating she was "unable to assess" and plaintiff's certified family nurse practitioner noted that evaluation of plaintiff's function capacity was beyond the scope of practice and should be performed by a disability evaluating physician. Dkt. #11,

pp.463-468 & 471. However, the medical record describes plaintiff's chronic diabetic polyneuropathy of the feet, bilaterally, as well managed, unchanged, stable and mild in severity and plaintiff reported that his back was doing well and that he wanted nothing further following physical therapy during the Summer of 2016 for a diagnosis of lumbrosacral degenerative disc disease. Dkt. #11, pp.324, 327, 350, 370-377, 382-383 & 444-445.

Mild to moderate limitations in a plaintiff's capacity for walking, standing, sitting for long periods, bending, stair climbing, lifting and carrying are generally consistent with the demands of light work. *John H. v. Comm'r of Soc. Sec'y*, 20-CV-921, 2021 WL 2355107, at *6 (W.D.N.Y. June 9, 2021); *Randy L.B. v.Comm'r of Soc. Sec'y*, 19-CV-358, 2019 WL 2210596, at *7 (N.D.N.Y. May 22, 2019). In the instant case, however, the ALJ acknowledged that she was incorporating restrictions beyond those suggested by Dr. Cirillo based on consideration of plaintiff's subjective complaints when she limited plaintiff to sedentary work with additional restrictions. Dkt. #11, p.26. The fact that the ALJ adopted an RFC assessment that is more restrictive than the medical opinions of record warrant is generally not a basis for remand. *Salisbury v. Comm'r of Soc. Sec'y,* 2020 WL 6384233, at *10 (W.D.N.Y. Oct. 30, 2020) (internal quotation omitted); *Edwards v. Comm'r of Soc. Sec*., 6:18-CV-6221, 2019 WL 1673486, at *8 (W.D.N.Y. April 17, 2019). An ALJ is entitled to weigh all of the evidence available to make an RFC determination that is consistent with the record as a whole; her RFC determination is not required to correspond perfectly with any of the opinions of medical sources. *Trepanier v. Comm'r of Soc. Sec'y,* 752 Fed. App'x 75, 79 (2d Cir. 2018).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #12), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #15), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
                **September 28, 2021**

                                        <u>s/ H. Kenneth Schroeder, Jr.</u>
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**